[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a civil action wherein the plaintiff, Rufus Smith, an inmate in the custody of the Commissioner of the Department of Correction (DOC), alleges intentional infliction of emotional distress by reason of denial CT Page 9892 by the defendants of contact visits between the plaintiff and his wife for a period of six months. The defendant, John J. Armstrong is the Commissioner of Correction. The defendant Hector Rodriguez was at all times pertinent to the complaint, the Warden of MacDougall Correctional Institution; the defendant Mark Strange was a Deputy Warden at MacDougall; the defendant Rick Matos was a Captain and unit manager at MacDougall. Armstrong is sued "in his official capacity", the other defendants in their "individual" capacities. The plaintiff seeks an injunction requiring Armstrong "forthwith to expunge from the plaintiff's institutional records all references to the aforesaid alleged offense and any penalty imposed as a result . . ." and seeks monetary damages as against defendants Rodriguez, Strange and Matos.
This matter began as a "§ 1983" civil rights action, the plaintiff claiming violation by the defendants of his constitutional rights under the first, fourth, eighth, ninth and fourteenth amendments, as well as intentional infliction of emotional distress, by reason of the defendants' denial to the plaintiff of contact visits. The case was transferred to federal district court where the plaintiff filed an Amended Complaint, abandoning his federal constitutional claims and asked that the case be remanded to this court. On August 21, 1998, the federal court granted the plaintiff's motion to amend complaint and remanded the matter to this court. On May 14, 1999, the defendants filed their Answer to the Amended Complaint, raising four special defenses. A hearing on the merits was held on November 30, 1999 and the matter was continued for briefs until May 15, 2000.
 II
The Court finds as follows: that in April, 1996, the plaintiff was incarcerated at the MacDougal Correctional Institution; that at that time and up to the time of hearing, he was married to Bonnie Smith; that Bonnie Smith maintained regular visitation with the plaintiff; that on April 14, 1996 the plaintiff produced a urine specimen which tested positive for opiates; that on April 15, 1996 the result of this test was confirmed by an independent laboratory. On April 16, 1996, the plaintiff was denied a contact visit with his wife. On April 17, 1996, the plaintiff received a disciplinary report for testing positive and an administrative hearing on the report was held on May 2, 1996, at which the plaintiff was found guilty of intoxication, a "Class A" violation, and received 45 days loss of good time; 30 days loss of visitation; 15 days loss of recreation; and 30 days loss of communication privileges.
 III
The plaintiff was also placed on "non-contact" status for six months; CT Page 9893 that is, he was allowed visits, but was not allowed to embrace or kiss his wife during the visits. It is this denial of contact visits with his wife that the plaintiff claims constitutes intentional or reckless infliction of emotional distress. The plaintiff points out that under Administrative Directive 9.5 punishment limits for a Class A violation can be "punitive segregation; loss of good time; and two different penalties" and that the four penalties he received as a result of the guilty finding did not include a six month loss of contact visits. The defendants respond that the suspension of contact visits was a security measure, that contact visits provide an opportunity for smuggling contraband into prison and pose an on-going problem for correction officials and, given the plaintiff's disciplinary record, the suspension of contact visits was a reasonable action to maintain safety and security at the facility. The defendants maintain the plaintiff has no entitlement to contact visits. The defendants cite the "Inmate Handbook", distributed to inmates on arrival at MacDougall, in particular Part II, Section 10. Visiting, para F.3.a, which reads:
 Any inmate found guilty of intoxication, refusal to give a specimen, or possession of contraband (i.e., tobacco, narcotics, currency and the like) will, in addition to any Dep's court sanctions, be placed on non-contact visiting status for a minimum of six months. An inmate may also be placed on noncontact visiting status for administrative security reasons.
The defendants argue that the plaintiff has failed to establish his claim of intentional infliction of emotional distress. The Court agrees with the defendants, for reasons stated below.
 IV
In order for the plaintiff to prevail on a claim of intentional infliction of emotional distress, "four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. New Haven, 220 Conn. 225, 266-67
(internal quotation marks, citations omitted). Liability for intentional infliction of emotional distress requires "`conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" Id., (citations omitted). CT Page 9894
Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Appleton v. Board of Education, 254 Conn. 205, 210
(citation omitted).
It is evident that the defendants' action in denying the plaintiff contact visits, cannot conceivably be considered "conduct exceeding all bounds usually tolerated by decent society." The policy suspending contact visits for inmates found guilty of intoxication was a rational one, addressing a real problem and reasonably calculated to promote the safety and security of the institution and its inhabitants. The Court finds said policy was reasonably disseminated to inmates through distribution of the Inmate Handbook and finds the plaintiff's claim he had not received a copy of the Handbook unpersuasive. The plaintiff has failed to establish, by a fair preponderance of the evidence that the conduct complained of was extreme and outrageous. The plaintiff has failed to establish that the defendants, or any of them, intended to inflict emotional distress on the plaintiff; rather, the intent was to maintain the safety and security of the correctional institution. Any distress suffered by the plaintiff was not the result of the defendants' conduct but rather the result of the plaintiff's violation of the rules. Finally, the plaintiff failed to establish, by a fair preponderance of the evidence, that the emotional distress he suffered was severe. There was no expert testimony as to the plaintiff's state of mind at the time of the deprivation, nor as to the likely effect of the deprivation on the plaintiff and the testimony of the plaintiff and his wife did not persuade the Court that the distress suffered by the plaintive was "mental distress of a very serious kind."
 V
The plaintiff, having failed to establish any of his claims, judgment may enter in favor of the defendants, John J. Armstrong, Hector Rodriguez, Mark Strange and Rick Matos.
By the Court
Downey, JTR